Harold J. Ruvoldt (HR-6556)
Cathy Fleming (CF-2682)
Savitha Keesari Masson (SM-3036)
EDWARDS & ANGELL, LLP
750 Lexington Avenue
New York, New York 10022
212-308-4411
Attorneys for Respondents-Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Arbitration Between:
:
:
BEAR STEARNS & CO. INC., BEAR STEARNS        :
SECURITIES CORP., and RICHARD HARRITON       :
:          03 Civ. 9919 (SHS)
Respondents-Petitioners,    :
v.                                  :
:
1109580 ONTARIO, INC.                        :
:
Claimant-Respondent.      :
:
- - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONDENTS-PETITIONERS' MEMORANDUM OF LAW IN
OPPOSITION TO CROSS-MOTION TO VACATE AND IN FURTHER
SUPPORT OF PETITION TO CONFIRM THE ARBITRATION AWARD**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................. (iii)

PRELIMINARY STATEMENT ................................................. 1

    Pertinent Procedural History ........................................... 2

    The Evidentiary Rulings During the Course of the
    Arbitration of Which Ontario Complains ........................ 9

    The Collateral Estoppel Ruling ...................................... 12

LEGAL ARGUMENT

POINT I:    THE AWARD MUST BE CONFIRMED ................ 12

    A.    Standard of Review ........................................... 12

    B.    Ontario Utterly Failed To Prove Damages –    15
        An Essential Element Of Each of Its Claims

        a.    Control Person Liability (Counts I & VII)    16

        b.    Common Law Fraud (Count II)    16

        c.    Aiding and Abetting Common Law Fraud and
        Conversion (Count III)    16

        d.    Breach of Contract (Count IV)    17

        e.    Negligence (Count V)    17

        f.    Violation of 10-b of the Securities Laws
        and Rule 10-b (5) (Count VI)    17

    C.    The Panel's Evidentiary Rulings Were Proper and Do Not
        Meet the Standard For Vacating An Award    18

        a.    Legal Standards For Overturning An Award Based On    18
        Erroneous Evidentiary Rulings

        (i)    Fundamentally Unfair Standard    18

        (ii)    Manifest Disregard of the Evidence Standard    19

| | | |
|---|---|---|
| D. | The Panel's Ruling on the OIPs | 19 |
| E. | The Panel's Ruling on the Trustee's Report Was Not in Manifest Disregard of the Law | 22 |
| F. | The Panel's Ruling on the McDaniel Decision is Not a Manifest Disregard of the Evidence | 23 |
| POINT II: | THE PANEL'S RULING ON THE MOTION TO PRECLUDE WAS PROPER AND NOT A MANIFEST DISREGARD OF THE LAW | 24 |
| A. | Standard For Vacating An Award For Manifest Disregard of the Law | 24 |
| B. | The Panel Properly Denied the Motion to Preclude | 24 |
| a. | The Law Favors Arbitrations Being Decided Independently | 26 |
| C. | Preclusion in This Case Would Have Been Unfair to Respondents-Petitioners | 28 |
| D. | In Addition to the Inconsistent Prior Decisions, Ontario Did Not Demonstrate the Other Prerequisites to Preclusion | 29 |
| a. | Claimant-Respondent Failed to Demonstrate that the Identical Issues Were Litigated | 29 |
| b. | The Panel Did Not Ignore Evidence Regarding the McDaniel Arbitration | 31 |
| c. | The Evidence Adduced at Arbitration Was Inconsistent with Determinations by the McDaniel Panel | 32 |
| CONCLUSION | | 35 |

Table of Contents.DOC

## TABLE OF AUTHORITIES

Cases

Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S. Ct. 439 (1988)..............................21

Bell Aerospace Co. v. Local 516 Int'l Union, United Auto., Aerospace & Agric.
    Implement Workers, 500 F. 2d 921 (2d Cir. 1974) ......................................................18

Brandt v. Brown & Co. Securities Corp., No. 94 Civ. 6640, 1995 WL 334381, *4
    (S.D.N.Y. June 5, 1995) ........................................................................................12, 14

Chew v. Gates, 27 F.3d 1432, 1438 (9th Cir. 1994), cert. denied,
    513 U.S. 1148 (1995)..................................................................................................26

Daily News, L.P. v. Newspaper & Mail Deliverers' Union of New York
    and Vicinity, No. 99 Civ. 5165, 1999 WL 1095613, at *7
    (S.D.N.Y. December 2, 1999) ....................................................................................19

D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659 (1990) ...........................25

First Interregional Equity Corp. v. Haughton, 842 F. Supp. 105 (1984) ..........................13

Ganino v. Citizens Utilities Companies, 228 F.3d 154 (2d Cir. 2000).............................16

Gen'l Committee of Adjustment, United Transp. Union v. CSX Railroad Corp.,
    893 F.2d 584 (3d Cir. 1990) ......................................................................................26

Gonce v. Veterans Admin., 872 F.2d 995 (Fed. Cir. 1989)........................................26, 27

Green v. Progressive Management Inc., No. 00 Civ. 2539, 2000 WL 1229755,
    at *2 (S.D.N.Y. August 29, 2000) ..............................................................................19

Greenwald v. Orb Communications & Marketing, Inc., 192 F. Supp. 2d 212
    (S.D.N.Y. 2002)..........................................................................................................17

Halligan v. Piper Jaffray, Inc., 148 F.3d 197 (2d Cir. 1998)................................13, 19, 24

In re Federated Dept. Stores, Inc., Securities, 2004 WL 444559,
    at *3 (S.D.N.Y. March 11, 2004) ..............................................................................15

In re Sokol, 113 F.3d 303 (2d Cir. 1997).........................................................................25

Internet Law Library, Inc. v. Southridge Capital, 223 F. Supp. 2d 474
    (S.D.N.Y. 2002)..........................................................................................................17

~7613937.DOC

Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86 (2d Cir. 1979) .............................25

Khandhar v. Elfenbein, 943 F.2d 244 (2d Cir. 1991) .......................................................26

Kramer v. Showa Denko K.K., 929 F. Supp. 733 (S.D.N.Y. 1996) ..................................25

Ledford v. Rapid American Corp., Docket # 1988 WL 3428 *1 (S.D.N.Y. 1988)...........21

Lindsay v. Ortho Pharm. Corp., 637 F.2d 87 (2d Cir. 1980)......................................25, 26

Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976)......................20, 21

Litvak Packing Co. v. United Food and Commercial Workers, Local Union No. 7,
    886 F.2d 275 (10th Cir. 1989) ..........................................................................13

Matter of Juan C.Y. Cortrines, 89 N.Y.2d 659 (1997) .....................................................25

May Ship Repair Contracting Corp. v. Barge Columbia New York,
    160 F. Supp.2d 594 (S.D.N.Y. 2001) ................................................................25

Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113 (2d Cir. 1998) .......................15

Moss v. Morgan Stanley, 553 F. Supp. 1347 (S.D.N.Y. 1983)........................................16

Nordic Bank PLC v. Trend Group Ltd., 619 F. Supp. 542 (2d Cir. 1989) .......................17

North River Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123 (S.D.N.Y. 1994)..................27

Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) .................................................25, 29

Polin v. Kellwood Co., 103 F. Supp. 2d 238 (S.D.N.Y. 2000) ...................................13, 18

Republic Corp. v. Procedyne Corp., 401 F. Supp. 1061 (S.D.N.Y. 1975)......................17

Robbins v. Kroger Properties, 116 F.3d 1441 (11th Cir. 1997) .......................................15

Rozsa v. May Davis Group, Inc., 187 F. Supp. 2d 123 (S.D.N.Y. 2002).........................17

Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999)...............16

United Paperworkers International Union, AFL-CIO v. Misco, Inc.,
    484 U.S. 29, 108 S.Ct. 364 (1987).............................................................14, 18

Willemijn Houdsternmattschappit, BV v. Standard Microsystems Corp.,
    103 F.3d 9 (2d Cir. 1997) ...................................................................................14

~7613937.DOC

Statutes

15 USC § 78ccc ................................................................................................................10

9 U.S.C. 10(a)(3) ............................................................................................................18

9 U.S.C.A. §10(a) ...........................................................................................................13

Fed.R.Evid. 803(17) .......................................................................................................23

~7613937.DOC

## PRELIMINARY STATEMENT

This is a motion to confirm an arbitration award. Bear Stearns & Co., Inc., Bear Stearns Securities Corporation, and Richard Harriton, (collectively "Bear Stearns" or "Respondents-Petitioners") prevailed in the arbitration before the National Association of Securities Dealers, NASD No. 97-00881 (the "Arbitration") on its motion for judgment as a matter of law, at the conclusion of the case presented by 1109580 Ontario, Inc. ("Claimant-Respondent" or "Ontario"). Ontario filed a cross-motion to vacate the award.

This arbitration was commenced by Ontario in 1997. Ontario very aggressively and actively litigated this case until a substantially similar case involving Ontario's principal partner was decided in Bear Stearns' favor. Ontario clearly understood the burden to prove its claims as evidenced by it making extensive discovery requests, reviewing tens of thousands of documents, designating thousands of documents in the pre-hearing document designation, identifying 22 potential witnesses, promising the presiding NASD panel (the "Panel") that it would hear testimony from a dozen witnesses (Claimant Ontario's Opening Argument, 1/10/02, 34:17-19), and proposing that the Panel would consider hundreds of exhibits (Claimant Ontario's Opening Argument, 1/10/02, 34:17-20).  Ontario made numerous written motions prior to and at the arbitration.

Ontario's principal Colwyn Rich testified by deposition in October 2001, in the substantially similar NASD arbitration entitled <u>Len Holubowich, Gail Holubowich and L.A Holubowich, Inc., a New Jersey Corporation v. Bear Stearns & Co., Inc., Bear Stearns Securities Corp., Alan C. Greenberg, Richard Harriton and Marshall J. Levinson</u>, NASD Arbitration No. 97-01914 ("<u>Holubowich</u>").  During <u>Holubowich</u>, Len Holubowich – a friend and business partner of Ontario's principal Colwyn Rich -

implicated Ontario with knowledge of the fraud at A.R. Baron. The panel in <u>Holubowich</u>

issued its ruling in favor of Bear Stearns on March 29, 2002 with a finding of zero

liability.[1]   Three months into the <u>Ontario</u> arbitration hearings, and during Ontario's case

in chief, as an apparent reaction to <u>Holubowich</u>, Ontario shifted its strategy. Rather than

introducing the thousands of documents or calling 22 witnesses promised, Ontario called

and adduced testimony from only two witnesses, both of whom are Bear Stearns

employees, and both of whom refuted the documentary evidence put in by Ontario.

Ontario never called its principal Colwyn Rich. Ontario never adduced any evidence of

damages.  It never even put Ontario's account statements into evidence.  There was

simply no evidence adduced by Claimant-Respondent on which the Panel could have

ruled in its favor.

**<u>Pertinent Procedural History</u>**

      Ontario commenced the Arbitration by filing a Statement of Claim with the

NASD on September 9, 1997.  Bear Stearns filed an Answer and Motion to Dismiss on

June 13, 1997.  Discovery began with Respondents-Petitioners' First Request for

Production of Documents on June 17, 1997.  Ontario amended its Statement of Claim on

September 9, 1997.   Ontario then moved for postponement of hearing dates scheduled

for February 5, 1998 because of an adversary proceeding in U.S. Bankruptcy Court.  The

Panel granted Ontario's motion for postponement.  When the Arbitration resumed several

months later, Ontario served its Request for Production of Documents on July 24, 1998.

Extensive and hotly contested discovery ensued for the next several years with the parties

exchanging volumes of documents.

---

[1] The award issued in <u>Holubowich</u> was confirmed by this Court on July 29, 2002.

During the course of the Arbitration, Ontario made approximately 20 motions and sent approximately 150 letters to the Panel, the NASD, or to Respondent, copying the NASD, almost all of which were responded to by Bear Stearns.  In addition, the Panel issued approximately 40 orders regarding discovery, scheduling, and motions-in-limine. There were also numerous telephone conferences.

The hearings began on January 10, 2002, and the Panel began hearing Ontario's witness testimony.  Bear Stearns' and Ontario's counsel traveled from New York to Southington, Michigan, the NASD venue closest to Ontario principal Colwyn Rich's Canadian residence, for the first two days of hearings. (See Arbitration Transcripts ("Tr."), 1/10/02 and 1/11/2002).  Peter Murphy, a Senior Managing Director in Bear Stearns' Correspondent Clearing Department, whom Ontario called as its first witness, also traveled from New York to attend the first hearing days in Detroit.  Murphy appeared without the necessity of process in response to the request of Ontario.[2]  While Mr. Rich was present at the first scheduled hearing together with his attorneys, he was not called as a witness by Ontario.  Mr. Rich requested to be excused from further attendance, which request the Panel granted. The hearing continued in Michigan on January 11, 2002, after which the parties returned to New York, by mutual agreement and the Panel's consent, to resume the hearing via video-conferencing on January 14th and 15th.

The hearings – and Murphy's testimony - continued in July for four sessions (July 18 and 19) and the parties reconvened again in August for eight sessions (August 8, 9, 12 and 13).  Daniel Taub, from Bear Stearns General Counsel's office, testified for the last

---

[2] Out of courtesy, Bear Stearns agreed to produce any current or former Bear Stearns employees at Ontario's request.

three dates at Ontario's request.  Additional sessions were scheduled for September 23,

24, 25, 26, 27,[3] 30 and December 9, 10, 11, 12, 16, 17, 18.  See Arbitration Panel's Order

of May 23, 2002 annexed as Exhibit A to Affidavit of Harold J. Ruvoldt, Sworn to April

6, 2004 ("Ruvoldt Aff.").  Claimant concedes that both Taub and Murphy's testimony

contradicted the findings in the SEC Orders Instituting Proceedings which Ontario had

moved into evidence. (Motion to Vacate at 19)

     As of September 16, 2002, a total of twenty sessions spanning ten hearing days

had been held, all in Claimant-Respondent's case-in-chief.  Ontario restricted its

witnesses to Bear Stearns' current and former employees.  Murphy testified for 13

arbitration sessions over seven days.  Daniel Taub, Bear Stearns' in-house counsel,

testified for six arbitration sessions over three days.  Keith Brigley, a former employee of

Bear Stearns, was expected to begin his testimony at Ontario's request on September 23,

2002.

     After the parties agreed on the record to Brigley appearing on September 23, 2002

(see Tr. 8/13/2002 at 600, 753-54) Ontario altered its plans and advised the Arbitration

parties that he would call Colwyn Rich as a witness during the week of September 23,

2002 and postpone Brigley's appearance until September 30, 2002.  (See Ruvoldt Aff. Ex.

B, Melnick Letter dated August 28, 2002.)  Approximately one week later, Ontario's

counsel again switched plans and requested Brigley's appearance for September 23 and

24, 2002, to be followed by two other former Bear Stearns' employees, Alan Finkelstein

and Richard Harriton.  (See Ruvoldt Aff. Ex. C, Melnick Letter dated September 4,

---

[3] Although September 27, 2002 was not listed as a scheduled date in the Panel's May 23, 2002 Order, it
was subsequently added by agreement of counsel and the Panel at the conclusion of the August 12, 2002
session.  See Tr. 8/13/2002, at 519-20.

2002). Bear Stearns confirmed in writing Brigley's availability on September 23 and 24, although it could not confirm that Finkelstein or Harriton, former employees, would be available on the designated dates based on the short notice. (See Ruvoldt Aff. Ex. D, Ruvoldt Letter dated September 10, 2002) On September 16, 2002, Ontario's counsel confirmed he sought Brigley's appearance for September 23 and 24, 2002. (See Ruvoldt Aff. Ex. E, Melnick Letter dated September 16, 2002)

On September 16, 2002, Bear Stearns' lead-counsel's mother passed away. Although this caused him to seek a two-day adjournment of a conference call scheduled for September 18, 2002 (since that was the day of his mother's wake in New Jersey), he agreed to and was prepared to participate in the scheduled conference call on September 20, 2002, the day following his mother's funeral. The conference call – which was to discuss witness scheduling – was moved by the Panel on notice to all parties from September 18 to September 20 at 2:30 in the afternoon to accommodate the wake and funeral. At Ontario's request, the conference was moved from 2:30 p.m. to 11:30 a.m. On September 19, 2002, the day before the scheduled conference call with the Panel, Ontario's counsel wrote to the NASD advising that "[c]laimant cannot and will not participate any further in the proceeding, which is not being conducted in accordance with applicable law, the NASD Code of Arbitration Procedure and, equally important in accordance with the parties agreement." (See Ruvoldt Aff. Ex. F, Melnick Letter dated September 19, 2002) Also on September 19, 2002, by separate letter, Ontario requested that the Panel dismiss the arbitration and "refer the parties to their judicial remedies, without prejudice, to any claims or defenses available to Ontario." See Ruvoldt Aff. Ex. G, Melnick Letter dated September 19, 2002) On September 20, 2002, the scheduled call

was attempted by the NASD, but was ultimately aborted because Claimant's counsel refused to participate.

Neither Ontario nor its counsel appeared at the scheduled September 23, 2002 morning hearing session.  Bear Stearns and witness Keith Brigley, as requested by Ontario, did appear, as did the Panel.  The September 23, 2002 morning hearing session was adjourned by the Panel, with the parties ordered to appear at 2:30 that afternoon. (See Ruvoldt Aff. Ex. H, NASD Letter dated September 23, 2002) Ontario defied the Panel's order by still refusing to appear, and it was noted on the record. (Tr. 9/23/02, 3:18-19) Instead, Claimant-Respondent's counsel declared in a letter that the arbitration had failed, that the proceedings had become infected with bias, that the Chairman had enabled the abuse of the proceedings, and that ordering Ontario to appear constituted unfairness and prejudice of the highest order.  (See Ruvoldt Aff. Ex. I, Melnick Letter dated September 23, 2002) Nonetheless, Ontario still did not appear, despite the specific order of the Panel. (Tr. 9/23/02, 10:25-11:7)

The Panel adjourned the afternoon hearing session of September 23rd, cancelled both hearing sessions scheduled for September 24th, and ordered the parties to appear at the morning hearing session on September 25, 2002.  (See Ruvoldt Aff. Ex. J, Panel's Order of September 23, 2002).  The Panel also denied Ontario's request to dismiss without prejudice the arbitration.  (Tr. 9/23/02, 10:25-11:7)

Following issuance of the Panel's September 23, 2002 order, Ontario stated by letter of September 23, 2002, that it was "pure lunacy" to ask it to proceed in light of the fact that they "were never told of the availability of witnesses."  (See Ruvoldt Aff. Ex. K, Melnick Letter dated September 23, 2002).  This claim was clearly contrary to the

representations made on the record on August 13, 2002, Bear Stearns' letter of September 10, 2002, and Ontario's letter of September 16, 2002, which clearly set forth that hearings would resume on September 23, 2002 with Brigley as Claimant's witness.

While still falsely maintaining that Respondents had never confirmed Brigley's appearance, by letter of September 24, 2002, Ontario's counsel requested an adjournment of the September 25, 2002 morning session, implying he would participate thereafter. (See Ruvoldt Aff. Ex. L, Melnick Letter dated September 24, 2002)  The Panel granted the adjournment and ordered the parties to appear on September  25, 2002 at 1:00 pm. (See Ruvoldt Aff. Ex. M, Order dated September 24, 2002)

On the afternoon of September 25, 2002, Bear Stearns appeared again with Brigley.  Ontario again did not appear, defying yet another of the Panel's orders.  While assembled at that afternoon session awaiting Ontario's appearance, the Panel and Respondents learned that Ontario had filed a complaint that day in the United States District Court for the Southern District of New York seeking declaratory and other relief to permit Ontario to pursue judicial remedies. (See, Claimant's Exhibit Binder, Vol. I. Ex.  2, Amended Complaint dated October 10, 2002 amending original complaint filed September 25, 2002)  No temporary restraining order was sought or obtained to stop the Arbitration hearing.  Upon learning of the filing of the complaint, the Panel *sua sponte* adjourned the Arbitration without setting further dates.[4]  (See Tr. 9/24/2002)

Bear Stearns filed a motion to dismiss the federal amended complaint on November 12, 2002 (See, Ruvoldt Aff. Ex. N, Full Briefing of Motion to Dismiss) which was granted on February 20, 2003. The Honorable Robert W. Sweet dismissed the federal

---

[4] This adjournment caused the loss of six scheduled dates in September 2002 and an additional seven dates in December 2002.

action. (See, Claimant's Exhibit Binder, Vol. 1 Ex. 3)   Judge Sweet aptly observed that "[u]nfavorable rulings do not provide an escape from the Arbitration which Ontario initiated." (Id. at 7)[5]

Following Judge Sweet's dismissal of the misguided federal complaint, the Arbitration resumed.  During a telephone conference with the Panel on March 24, 2003, fourteen hearing dates were scheduled beginning June 23, 2003.  Apparently recognizing that it could not prove its case, Ontario made a last ditch attempt at preventing the full and fair litigation of its claims.  On April 15, 2003, after calling witnesses and putting documents into evidence Ontario filed a Motion to Preclude[6] to prevent Bear Stearns from presenting a defense in this case based upon a ruling in favor of another claimant in an arbitration entitled Bernard McDaniel and Maureen McDaniel v. Bear Stearns & Co., et. al. NASD No. 97-00497 ("McDaniel Award") (Claimant's Exhibit Binder, Vol. II & III, Ex. 15-21).  The motion was fully briefed by both sides and argued before the Panel. (Id.) (See Transcript of Oral Argument 5/30/03)  On June 3, 2003, the Panel denied the Motion to Preclude, (Claimant's Exhibit Binder, Vol. III, Ex. 22) which gave Respondents-Petitioners an opportunity to present evidence in its defense, and notably, required Claimant-Respondent to present evidence in support of its claims in this case. Prior to reconvening the scheduled hearings, and seven days after the Panel ruled that Ontario should go forward with its proofs, Ontario gave notice that it "intends to close or rest its case forthwith.  Ontario will put on no further witnesses and will introduce no further documentary evidence in the course of the arbitration." (Ruvoldt Aff. Ex. O,

---

[5] Judge Sweet amended his Order for a typing error to replace "the motion of Ontario is granted" with "the motion of Bear Stearns is granted."  (See Ruvoldt Aff., Ex. N)

[6] The Motion was untimely, coming as it did after testimony and evidence.  Despite its untimeliness, the Panel fully considered the motion. (See, Panel's Order June 3, 2003, Claimant's Exhibit Binder, Vol. III, Ex. 22).

Letter to the NASD dated June 10, 2003)   Ontario further admitted that "there is no

evidence of damages on the record" and encouraged Bear Stearns to seek a directed

verdict. (See Ruvoldt Aff. Ex. P, Letter to NASD dated June 12, 2003) (Transcript of

Conference Call 6/17/03, 7:22-9:8)  Ontario did not call its remaining 20 promised

witnesses – including Colwyn Rich, the principal of Ontario – nor did it offer any

evidence of damages.  Ontario did not even put into evidence the account statements,

trading history, or records of the Claimant on which it sought damages. [7]

        Thereafter, Bear Stearns moved for an award or judgment at the conclusion of

Ontario's case on July 31, 2003.  Following oral argument on September 29, 2003, the

Panel granted the motion and issued an award in favor of Bear Stearns dismissing each

and every claim with prejudice on December 11, 2003.  The Panel concluded "Claimant

rested its case after presenting two witnesses and documentary evidence. It is not possible

to make detailed findings of fact on the record before the Panel. Claimant has failed to

carry its burden of proof on the claims alleged, and has adduced no evidence on

damages."  (Award at 5; Claimant's Exhibit Binder, Vol. I, Ex. 1) (See also Fully Briefed

Motion for Judgment As a Matter of Law and Exhibits annexed to Ruvoldt Aff. as

Ex. R).  Bear Stearns petitioned this Court to confirm the Award on December 12, 2003,

and this Cross-Motion to Vacate followed.

**The Evidentiary Rulings During the Course of the Arbitration of Which Ontario
Complains**

        Throughout the Arbitration, Ontario unjustifiably, verbally and in writing,

accused the Panel of misconduct and wrongdoing, similar to what Ontario alleges in its

---

[7] Ruvoldt Aff. Ex.Q, Letter from Ontario to NASD dated September 18, 2003 admitting there is an "absence of formal proof of damages" and that "oral argument will accomplish nothing."  Ontario did participate in an oral argument, in which Ontario stated "We do concede again that we did not put proof of damages in evidence." (Tr. 9/29/2003, 20:21-23)

current motion to vacate.  Ontario now complains of evidentiary rulings[8] decided in the

Arbitration which relate to three documents: (i) the SEC Orders Instituting Proceedings

of Bear Stearns Securities Corp. and of Richard Harriton ("BSSC OIP" and "Harriton

OIP" respectively); (ii) the decision issued in the McDaniel Award and in the opinion of

the Honorable Shira A. Scheindlin (01 Civ. 7054 (SAS), 196 F.Supp.2d 569 (S.D.N.Y.

2002) (the "McDaniel Decision"); and (iii) the January 9, 2002 Report of the Trustee for

the Liquidation of the Business of A.R. Baron & Co., Inc. Pursuant to Section 7(d) of the

Securities Investor Protection Act ("Trustee's Report") issued by James W. Giddens

("Trustee") an attorney with Hughes, Hubbard & Reed, Trustee of A.R. Baron & Co.,

Inc. ("Baron")[9]

 Ontario essentially won its evidentiary motions over Respondents-Petitioners'

objections, but Claimant-Respondent complains to the contrary.  First, Ontario argues

that the Panel did not accept the OIPs as evidence and was legally wrong to rule that the

OIPs would not by themselves establish a prima facie case (Motion to Vacate at 18-19).

The factual portions of the OIPs were admitted (over Bear Stearns' objections),[10] "only as

some evidence of the actions and omissions of Respondent Bear Stearns Securities

Corporation and Richard Harriton with respect to A.R. Baron."  (Claimant's Exhibit

Binder, Vol. I, Ex. 9)  The Panel cautioned Ontario that the OIPs alone "do not establish a

---

[8] As set forth, infra, we take issue with the manner in which Claimant mischaracterizes rulings and urge this Court to examine carefully the actual rulings, as opposed to the Claimant's description of rulings.

[9] The Trustee was appointed pursuant to the Securities Investor Protection Act ("SIPA" which created the Securities Investor Protection Corporation "SIPC") to administer the bankrupt estate of Baron pursuant to SIPA. While SIPC is not an agency of the government, the SEC exercises extensive control over its business affairs (see, 15 USC § 78ccc). SIPC does not have independent investigatory powers.

[10] Bear Stearns objected to the admission of the OIPs on the grounds that Bear Stearns made an Offer of Settlement as a business decision which the SEC accepted.  The consent Order was "solely for the purpose of these proceedings… and without admitting or denying the findings set forth herein…" (OIP at 1) In addition, the "findings herein are made pursuant to BSSC's Offer of Settlement and are not binding on any other person or entity in this or any other proceedings." (OIP at 2 n.1).  The "findings" of the OIP were never litigated and Bear Stearns did not have an opportunity to be heard.

prima facie case for claimant."[11] Id.  Having placed before the Panel the OIPs, Ontario

then called as its first two witnesses, Bear employees Murphy and Taub, whose sworn

testimony contradicted the OIPs – a fact conceded by Claimant in his brief.  (Brief at 19

("[t]he evidence in the [OIPs] refute much, if not all, of the testimony elicited from the

two (2) witnesses who testified at the Arbitration …."))．  Thus, Claimant-Respondent

itself offered live testimony evidence which contradicted what it now claims was its own

"prima facie" case.

        Second, Ontario also offered as evidence the McDaniel Award and McDaniel

Decision during the Arbitration.  The Panel ordered that "it should be delivered to the

panel as an attachment to a brief and not as documentary evidence." (See Panel Order

dated April 2, 2002, Ruvoldt Aff. Ex. S)  In his closing submission in opposition to Bear

Stearns' motion for judgment as a matter of law, Ontario submitted as exhibits the

McDaniel Award and the McDaniel Decision.  Thus, McDaniel was before the Panel and

was considered by them in making their final determination of the case.

        Third, Ontario offered in its motion *in limine* No. 3, the Report of the Trustee for

the Liquidation of the Business of A.R. Baron & Co., Inc. dated January 9, 2002 and,

contrary to Ontario's claim that the Panel would not consider this evidence, the Panel

ruled (over Bear's opposition) that the report could be offered "…provided that Claimant

also makes the SIPC Trustee available to testify at the hearing prior to the offer".

(Claimant's Exhibit Binder, Vol. III, Ex. 22)

---

[11] Notably, the McDaniel panel, too, did not find the OIPs were sufficient to establish a prima facie case as
Ontario wrongly states (Motion to Vacate at 6).  The McDaniel panel ruled it "would not necessarily
conclude that the SEC findings establish a prima facie case for Claimants, nor would the panel defer to the
findings of the SEC contrary to the duty of the panel to find the facts in the arbitration." (McDaniel Award
at 10).

Prior to making its motion *in limine*, Ontario had issued a subpoena to the SIPC Trustee apparently recognizing that his testimony was crucial to the admission of the Report.  Nonetheless, after the Panel ruled, Ontario did not call the Trustee or make him available. Thus, the exclusion of the Trustee's Report was a result of a deliberate choice by Ontario.

## The Collateral Estoppel Ruling

Ontario also complains that the Panel manifestly disregarded the law when it denied Claimant collateral estoppel based on the award of one prior arbitration panel (as opposed to two other prior arbitration awards which found for Bear Stearns)[12].  Ontario's Motion to Preclude was denied, but it did not prevent him from actively pursuing his claims as he did when he first initiated the Arbitration.

The Panel's rulings were predominantly in Ontario's favor and none of the rulings stopped him from adducing the evidence necessary to attempt to prove his case. The procedural history makes clear that Ontario simply abandoned the arbitration.  The record is clear that Ontario did not prove its case.  The Arbitration Award should be confirmed.

## LEGAL ARGUMENT

## POINT I

## THE AWARD MUST BE CONFIRMED

### A.    Standard of Review

A court "must confirm" an arbitration award unless it is modified, corrected, or vacated pursuant to the doctrine of "manifest disregard of the law."  Brandt v. Brown &

---

[12] McDaniel was a pure customer case decided against Bear Stearns.  Holubowich, an investors case, and Meere, a customer case, were both decided in Bear Stearns' favor.  An award in favor of Bear Stearns with a finding of no liability was also issued in Rodney Meere v. Bear Stearns & Co., Inc., NASD Arbitration No. 99-01489 ("Meere") on April 16, 2003 and confirmed by this Court on July 23, 2003.  Ontario is an investors case.

<u>Co. Securities Corp.</u>, No. 94 Civ. 6640, 1995 WL 334381, *4 (S.D.N.Y. June 5, 1995).

The standard of review for vacating an arbitration award is "among the narrowest known

to law." <u>Litvak Packing Co. v. United Food and Commercial Workers, Local Union No.

7</u>, 886 F.2d 275, 276 (10th Cir. 1989). Under §10(a) of the Federal Arbitration Act, an

arbitration award may vacated based on one of four grounds: 1) where the award is

procured by corruption, fraud, or undue means; 2) where there is evident partiality or

corruption in the arbitrators; 3) where the arbitrators were guilty of misconduct in

refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear

evidence pertinent and material to the controversy; or of any other misbehavior by which

the rights of any party have been prejudiced; 4) where the arbitrators exceeded their

powers, or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made. 9 U.S.C.A. §10(a); <u>Polin v. Kellwood Co.</u>, 103 F.

Supp. 2d 238, 256 (S.D.N.Y. 2000).  In addition to the statutory grounds set forth above,

an award may also be vacated for an arbitrator's "manifest disregard of the law." <u>First

Interregional Equity Corp. v. Haughton</u>, 842 F. Supp. 105, 108 (1984); <u>Halligan v. Piper

Jaffray, Inc.</u>, 148 F.3d 197, 202 (2d Cir. 1998). However, the Second Circuit has also

stated that this doctrine is "severely limited." <u>Halligan</u>, 148 F.3d at 202 (2d Cir. 1998)

(<u>quoting</u> <u>Government of India v. Cargill, Inc.</u>, 867 F.2d 130, 133 (2d Cir. 1989)). In order

to vacate an award based on manifest disregard of the law, a court must find both that "1)

the arbitrators knew of a governing legal principle yet refused to apply it or ignored it

altogether; and 2) the law ignored by the arbitrators was well defined, explicit, and

clearly applicable to the case." <u>Halligan</u>, 148 F.3d at 202 (2d Cir. 1998) (<u>citing</u> <u>DiRussa</u>

v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997), cert. denied, 522 U.S.

1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998).

There is a very strong public policy in favor of arbitration awards being upheld as

long as there is "even a barely colorable justification for the outcome reached." Willemijn

Houdsternmattschappit, BV v. Standard Microsystems Corp., 103 F.3d 9, 13 (2d Cir.

1997) (quoting Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich &

Co., A.G.), 579 F.2d 691, 704 (2d Cir. 1978)). Even if a court finds that the panel

committed serious errors, the court may not vacate the award as long as the arbitrators are

"even arguably construing or applying the contract [to arbitrate] and acting within the

scope of [their] authority."  United Paperworkers International Union, AFL-CIO v.

Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364 (1987).

Moreover, the Panel is not at fault for Ontario's failure to put forth evidence it

claimed it would offer to prove its case. Brandt, 1995 WL 334381, at *4 (motion to

vacate was denied, and the court did not find the arbitration was fundamentally unfair

because "the arbitrators cannot be blamed for petitioners' own inaction" when petitioners

could have subpoenaed witnesses but did not, and did not call an expert witness until

after evidentiary portion of the case closed, and even then only sought to introduce

minimal evidence).

Given Ontario's concession that there is no evidence in the record to support a

finding of damages, this Court could and should confirm the Arbitration Award on that

failure alone.  But even beyond that, there is nothing in this record which supports

overturning the Award.

There is no mystery as to why Bear Stearns prevailed on its motion for judgment as a matter of law. The simple fact is Ontario did not prove its case.  Rule 50(a)(1) of the Federal Rules of Civil Procedure provides the standard for granting judgment as a matter of law (JMOL):

> If during a trial by jury a party has been fully heard on an issue and *there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue,* the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim … that cannot under the controlling law be maintained … without a favorable finding on that issue.

(Emphasis added). <u>See</u>, <u>Merrill Lynch Interfunding, Inc. v. Argenti</u>, 155 F.3d 113, 120 (2d Cir. 1998).

## B.   Ontario Utterly Failed To Prove Damages – An Essential Element Of Each of Its Claims

Directed verdicts are commonly granted in securities actions where a plaintiff has failed to establish an element of its claim.  <u>See</u> <u>Robbins v. Kroger Properties</u>, 116 F.3d 1441, 1448-1449 (11th Cir. 1997) (affirming district court's directed verdict where plaintiff failed to establish loss causation).  Ontario admitted it did not prove damages and that there was no evidence of damages on the record. (Tr. 9/29/2003, 20:21-23)  In doing so, Ontario conceded that it failed to prove an essential element of its claims and thus did not establish a prima facie case on any claim. <u>See</u> <u>In re Federated Dept. Stores, Inc., Securities</u>, 2004 WL 444559, at *3 (S.D.N.Y. March 11, 2004) ("Failure to sufficiently plead the elements of a cause of action is grounds for dismissal.")  The Panel ruled that Ontario "failed to carry its burden of proof on the claims alleged, and has adduced no evidence on damages."  (Award at 5, Claimant's Exhibit Binder, Vol. I, Ex. 1)

The elements and burden of proof which Claimant-Respondent was required, but did not meet, on each of his causes of action is as follows:

### a.        Control Person Liability (Counts I & VII)[13]

The elements[14] of this claim are: (1) there was a primary violation of the securities laws by the person controlled (<u>damages</u> required in 10-b and 10-b(5) Count VI); (2) the defendant directly, or indirectly, controlled the person liable for violating any provision of the Exchange Act or under any rule promulgated thereunder; and (3) the controlling person was in some meaningful way a culpable participant in the fraud perpetrated by the controlled person.  <u>Ganino v. Citizens Utilities Companies</u>, 228 F.3d 154 (2d Cir. 2000).

### b.        Common Law Fraud (Count II)

The elements of this claim are:  (1) a material misrepresentation or omission by defendants, (2) made with knowledge of its falsity, (3) with the intent to defraud, and (4) reasonable reliance on the part of the plaintiff that (5) <u>caused damages</u>.  <u>Schlaifer Nance & Co., Inc. v. Estate of Warhol</u>, 194 F.3d 323 (2d Cir. 1999).

### c.        Aiding and Abetting Common Law Fraud and Conversion (Count III)

The elements of this claim are: (1) the existence of a fraud (must prove <u>damages</u> in Common Law Fraud Count II); (2) defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.  <u>Moss v. Morgan Stanley</u>, 553 F. Supp. 1347 (S.D.N.Y. 1983).

---

[13] Claimant Ontario's Amended Statement of Claim dated September 9, 1997 amended Count I with Count VII for Control Person Liability.

[14] We use the term "elements" to denote the components of a cause of action a claimant must prove in order to prevail.

**d.      Breach of Contract (Count IV)**

The elements of this claim are:  (1) making of a contract; (2) performance of the contract by plaintiff; (3) breach of the contract by the defendant; (4) <u>damages</u> suffered by plaintiff.  <u>Nordic Bank PLC v. Trend Group Ltd.</u>, 619 F. Supp. 542, 561 (2d Cir. 1989); <u>Republic Corp. v. Procedyne Corp.</u>, 401 F. Supp. 1061, 1068 (S.D.N.Y. 1975).

**e.      Negligence (Count V)**

The elements of this claim are: (1)  defendant owed claimant  a duty of reasonable care, (2) a breach of that duty by respondent;  (3) a resulting injury proximately caused by the breach; (4) <u>damages</u>.  <u>Rozsa v. May Davis Group, Inc.</u>, 187 F. Supp. 2d 123, 131 (S.D.N.Y. 2002).

**f.      Violation of 10-b of the Securities Laws and Rule 10-b (5) (Count VI)**

The elements of this claim are:  (1) Respondent made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which Claimant  relied (reliance must be reasonable);  (5) the reliance was the proximate cause of his injuries, and (6) <u>damages</u>.  <u>Greenwald v. Orb Communications & Marketing, Inc.</u>, 192 F. Supp. 2d 212, 226 (S.D.N.Y. 2002); <u>Internet Law Library, Inc. v. Southridge Capital</u>, 223 F. Supp. 2d 474 (S.D.N.Y. 2002). It is simple: each and every one of Ontario's claims failed as a matter of law for failure to prove damages.

**C.**     **The Panel's Evidentiary Rulings Were Proper and Do Not Meet the Standard For Vacating An Award**

      **a.**     **Legal Standards For Overturning An Award Based On Erroneous Evidentiary Rulings**

           (i)     Fundamentally Unfair Standard

Section 10(a) of the Federal Arbitration Act (FAA) sets forth the grounds for vacating an arbitration award. One of these grounds is that an award may be vacated when the panel is "guilty of misconduct…in refusing to hear evidence pertinent and material to the controversy; or by any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. 10(a)(3). "Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Polin v. Kellwood Co., 103 F. Supp. 2d 238, 261 (S.D.N.Y. 2000) (quoting Tempo Shain Corp. v. Bertek, 120 F.3d 16, 20 (2d Cir. 1997)). Furthermore, "arbitrators are not required to 'follow all the niceties observed by the federal court'" in making their evidentiary decisions. Polin, 103 F.Supp.2d at 261 (quoting Bell Aerospace Co. v. Local 516 Int'l Union, United Auto., Aerospace & Agric. Implement Workers, 500 F.2d 921, 923 (2d Cir. 1974). While the panel "should hear all evidence proffered that is 'pertinent and material,' an error in their determination of 'pertinent and material' must be one that deprives a party of a fundamentally fair arbitration process" in order for the award to be vacated. Polin, 103 F. Supp. 2d at 261 (quoting Tempo, 120 F.3d at 20).  Even if a court finds that the panel committed serious errors, the court may not vacate the award as long as the arbitrators are "even arguably construing or applying the contract [to arbitrate] and acting within the scope of [their] authority." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364 (1987).

(ii)      Manifest Disregard of the Evidence Standard

Ontario makes a separate argument regarding manifest disregard of the evidence. Such an argument has been recognized in a few cases, although it appears to be simply a variation on the doctrine of manifest disregard of the law. In Halligan, the court set forth as the applicable law the rule governing manifest disregard of the law. However, in making its decision, the court noted that it was "inclined to hold that [the arbitrators] ignored the law or the evidence or both." Halligan, 148 F.3d at 203. A separate test for manifest disregard of the evidence [as opposed to law] does not appear to govern. (See Green v. Progressive Management Inc., No. 00 Civ. 2539, 2000 WL 1229755, at *2 (S.D.N.Y. August 29, 2000); Daily News, L.P. v. Newspaper & Mail Deliverers' Union of New York and Vicinity, No. 99 Civ. 5165, 1999 WL 1095613, at *7 (S.D.N.Y. December 2, 1999) (citing Halligan's "manifest disregard of the law or the evidence")).

As set forth below, Ontario cannot demonstrate that any of the rulings meet this high threshold for vacating the award.[15]

**D.      The Panel's Ruling on the OIPs**

The Panel ruled, over Bear Stearns opposition, that the Bear Stearns and Harriton OIPs would be admitted into evidence only for "the findings of fact, but not the legal discussions or conclusions, the findings of violation of law, or the Order" in the Bear Stearns OIP and Harriton OIP.  See Panel's Order dated June 28, 2002 (Claimant's Exhibit Binder, Vol. I, Ex. 9)[16]  However, the Panel advised Claimant-Respondent that

---

[15] Bear Stearns did not agree with the McDaniel Award and sought to vacate it.  The Court, even while noting that she might have decided differently, upheld the award noting the extraordinarily limited scope of review of arbitration awards.  That extremely limited review – which must also apply herein to Ontario – is part of the "price" when parties agree to arbitrate, as Ontario did here.

[16] Claimant provided the briefing on Motion in Limine No. 1 as Exhibits 10-12, but excluded Respondents' Opposition to Claimant's Supplemental Brief which is annexed to Ruvoldt Aff. as Ex. T.

these materials "do not establish a prima facie case for Claimant or change the burden of proof as to liability in this case, and are subject to rebuttal by Respondents." Id.[17]  After submitting the OIPs, Claimant then called two witnesses who contradicted the OIPs. (Motion to Vacate at 19)

Further, although Ontario complains about how it was prejudiced by the preclusion of the OIP, it readily acknowledges that substantial portions of the OIPs were, in fact, admitted as evidence.  See, e.g., Motion to Vacate, at 19 ("the BSSC and Harriton OIPs . . . were still admitted 'as some evidence of the actions and omissions of Respondent [BSSC] and [Harriton] with respect to [Baron]").  In fact, Ontario discusses for three pages all of the OIP evidence considered by the Panel (id. at 20-22), with its true complaint being its assumption that the panel "refused to consider", "disregarded or ignored the evidence contained in the OIPs".  Id. at 20, 21.  In fact, there is no reason to believe that the Panel did not consider the OIPs just as it said it would  Ontario dismisses without foundation the live testimony of Taub and Murphy that Ontario produced which contradicted the OIPs.

We submit that the Panel would have been correct if it had denied admission of the OIPs at all.

The Second Circuit has recognized that consent judgments cannot be used as evidence in subsequent litigation.  Lipsky v. Commonwealth United Corp., 551 F.2d 887,

---

[17] Claimant argues that the McDaniel panel accepted the OIPs in evidence with no limitation.  (Motion to Vacate at 5)  Contrary to his assertion, even the McDaniel panel, in accepting the OIPs into evidence stated that it "would consider the weight, relevance and materiality of the findings… and would not necessarily conclude that the SEC findings establish a prima facie case for Claimants." (McDaniel Award at 10)  The McDaniel panel stated that it would not consider the OIPs "binding on the panel or preclusive in any way, that the findings would not be regarded as res judicata or collateral estoppel, they would [not] be considered as an admission of facts or liability by Bear or shift the burden of proof from Claimants to Bear." (McDaniel Award at 10).  It also stated that it would not "defer to the findings of the SEC contrary to the duty of the panel to find the facts in this arbitration." Id.

893 (2d Cir. 1976).   See also Ledford v. Rapid American Corp., Docket # 1988 WL 3428 *1 (S.D.N.Y. 1988) (citing Lipsky for the holding that "where there is no actual adjudication of issues in the other proceedings 'it cannot be used as evidence in subsequent litigation between that corporation and another party'").   Here, the Panel ruled in Claimant's favor by allowing the OIPs into evidence.

Ontario relies on Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S. Ct. 439 (1988) for the proposition that the OIPs should have been admitted in their entirety.   The Beech court admitted factual findings, which the Panel here also admitted.   Any assertion that Beech can be cited in support of the position that the SEC OIPs are admissible in their entirety is a distortion of the Supreme Court's holding therein.   In Beech, the Supreme Court addressed whether governmental investigatory reports and conclusions containing "factual findings" fell under the Federal Rule of Evidence 803(8)(C) exception to hearsay and whether such "factual findings" extended to any conclusions and opinions contained in these reports.   Id. at 156.   In Beech, a conclusionary report of an investigation, not an initial complaint or Order Instituting Proceedings was at issue.   A governmental investigative report is clearly distinguishable from SEC settlement agreements, particularly where, as in the SEC consent orders, it was agreed that the OIPs would not be admissible in any other proceedings.

Accordingly, as is abundantly clear from its holding, the Beech case only considered admissibility of factual findings in official, independent government investigative reports, not legal conclusions or violations of law in SEC settlement agreements.

NYC_FINAL FINAL Opposition to Motion to Vacate.DOC

The proceeding at issue here was an arbitration before an NASD panel where the OIPs were admitted for a limited purpose. The Panel's discretion to exclude the OIPs conclusions was not a manifest disregard of the law or evidence, especially where the Panel considered the findings of the OIPs, and where Claimant introduced directly contradictory live testimony.

**E.      The Panel's Ruling on the Trustee's Report Was Not in Manifest Disregard of the Law**

Ontario offered the Report of the SIPC Trustee in its motion *in limine* No. 3. (Claimant's Exhibit Binder, Vol. III Ex. 24-25).  The motion was fully briefed and argued before the Panel. (See Oral Argument Tr. 5/30/2003).  Prior to its motion, Ontario obtained from the Panel a subpoena for the Trustee, apparently recognizing that his testimony would be required to admit the Report into evidence.

The Panel denied, without prejudice, Claimant-Respondent's motion *in limine* regarding the Report of the SIPC Trustee. (See Order dated June 3, 2003, Claimant's Exhibit Binder, Vol. II, Ex. 22)  However, the Panel's order stated that "Claimant may offer the SIPC Trustee's Report at the hearing provided that Claimant also makes the SIPC Trustee available to testify at the hearing prior to the offer." Id. This ruling was adverse to Bear Stearns[18] and essentially permitted the admission of the Trustee's Report. It was not the Panel's "failure and refusal to admit" the Report as Ontario argues (Motion to Vacate at 36), but rather Ontario's failure and refusal to call the authenticating witness. Bear Stearns submits that the Panel would have been correct in refusing to admit the Trustee's Report.  However, the simple fact is that it ruled against Bear Stearns and

---

[18] Bear Stearns argued against admission of the Trustee's Report at all, in part because the Trustee had been an adversary of Bear Stearns in another proceeding.  (Claimant's Exhibit Binder, Vol. III Ex. 25, p.4; Oral Argument Tr. 5/30/2003 51:18-52:13).

provided the means for Ontario to get the report into evidence.  The Panel's ruling was not a manifest disregard of the law or evidence, but rather an invitation for Ontario to provide testimony in support of its case and to provide Bear Stearns an opportunity, which it would not have otherwise had, to cross-examine the Trustee and his Report. Ontario failed to accept this opportunity and instead used it as justification for resting its case and returning to court.

The Panel ruled that Ontario could offer the Trustee's Report despite Bear Stearns' objection and argument that the Report was not admissible under Fed.R.Evid. 803(17) or 803(8)(c).  (See Respondents' Opposition to Motion In Limine No. 3 at 10-15 in Claimant's Exhibit Binder, Vol. III, Ex. 25)

F.   **The Panel's Ruling on the McDaniel Decision is Not a Manifest Disregard of the Evidence**

The Panel did not accept the McDaniel Decision as evidence[19], but properly required the Claimant-Respondent submit the decision, like any case cited and relied upon, as an attachment to a brief.  The Panel ruled on Ontario's motion in limine No. 2 that McDaniel should be "delivered to the Panel as an attachment to a brief and not as documentary evidence."  (See Panel's Letter dated April 2, 2002, Ruvoldt Aff. Ex. S). The Panel's ruling was not a manifest disregard of the evidence since Claimant-Respondent attached it to its brief in opposition to the motion for directed verdict.

---

[19] Upon the motion to vacate the McDaniel Award, the Honorable Shira A. Scheindlin acknowledged that: "If I had that authority [to substitute the court's judgment for that of the panel], I might indeed have decided the case differently."  (See Ontario's Exhibit Binder Exhibit 14 page 3) (emphasis added). However, the court was constrained from doing so, recognizing that "the court's review of an arbitration award is rigidly narrow."  Id.  The Court, in considering the motion to vacate the McDaniel Award could not, and did not, determine the liability of Bear Stearns.  It could only review the decisions of the arbitration panel and determine whether there was colorable justification for their decision.

McDaniel was before the Panel, as Ontario had requested, when making their final

determination.

**POINT II**

**THE PANEL'S RULING ON THE MOTION TO PRECLUDE WAS
PROPER AND NOT A MANIFEST DISREGARD OF THE LAW**

**A.      Standard For Vacating An Award For Manifest Disregard of the Law**

As described in detail above, the legal standard to vacate an award based on

manifest disregard of the law, is severely limited.  This Court must find both that "1) the

arbitrators knew of a governing legal principle yet refused to apply it or ignored it

altogether; and 2) the law ignored by the arbitrators was well defined, explicit, and

clearly applicable to the case." Halligan, 148 F.3d at 202 (2d Cir. 1998) (citations

omitted).  Ontario has failed to show the Panel met both prongs of this stringent

standard.[20]

**B.      The Panel Properly Denied the Motion to Preclude**

As noted, Ontario made this motion after the Panel already heard testimony and

accepted exhibits.  At the point the motion was made, three arbitrations arising from A.R.

Baron had been decided: McDaniel (against Bear Stearns), and Holubowich and Meere

(in Bear Stearns' favor).  The issue was fully briefed and argued.  (See Oral Argument,

Tr. 6/17/03)  Given the law and the facts, collateral estoppel was not proper.  This Court

should consider only whether the Panel manifestly ignored the law in denying the motion.

Under the equitable doctrine of non-mutual offensive collateral estoppel, a

plaintiff may under certain limited circumstances (not present here) foreclose a defendant

from relitigating an issue which the defendant has previously litigated unsuccessfully in

---

[20] Ontario fails to inform this Court that one of the parties Ontario would use the McDaniel Award to
preclude is Richard Harriton who was not a party in McDaniel.

- 24 -

another action with another party.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-32 (1979).

Collateral estoppel may be available where four factors are met: (1) the identical issue was raised in the previous proceeding, (2) the matter was "actually litigated and decided" in the previous proceeding; (3) the party had a "full and fair opportunity" to litigate the issue; and (4) the resolution of the issue was "necessary to support a valid and final judgment on the merits." May Ship Repair Contracting Corp. v. Barge Columbia New York, 160 F. Supp. 2d 594, 599 (S.D.N.Y. 2001).  See also Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1979) (quoting Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995)).

> The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief.  See In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997) (looking to New York law and stating that the party seeking to invoke collateral estoppel bears the burden of establishing the identity of issues between the prior and present issues and the necessity of their having been decided.)

May Ship, 160  F. Supp. 2d at 599 (denying preclusion).  Ontario had the burden of proving its applicability.

This equitable doctrine is "grounded on concepts of fairness and should not be rigidly or mechanically applied." In the Matter of Juan C.Y. Cortrines, 89 N.Y.2d 659, 667 (1997), citing D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (1990).  Courts prohibit the use of collateral estoppel if the issues in the two proceedings are not truly identical.  Kramer v. Showa Denko K.K., 929 F. Supp. 733, 750 (S.D.N.Y. 1996); Lindsay v. Ortho Pharm. Corp., 637 F.2d 87, 92 n.2 (2d Cir. 1980) (court declined to use discretion to preclude issues).  In addition, "courts bar the use of offensive collateral estoppel where there is any ambiguity regarding which issues were decided in

the prior proceeding." Kramer, id., citing Chew v. Gates, 27 F.3d 1432, 1438 (9th Cir.

1994), cert. denied, 513 U.S. 1148 (1995); see Khandhar v. Elfenbein, 943 F.2d 244, 248

(2d Cir. 1991).

The arbitrators must consider whether there is a precise identify of, inter alia,

facts, parties, and circumstances before any preclusive effect may be given to an

arbitration award in a subsequent action:

> It is one thing to bind the parties by estoppel when the same facts have
> already been resolved by an earlier forum of competent authority . . .; it is
> quite another to bind them when there is not precise correspondence of
> facts, circumstances, and timing, as here.

Gonce v. Veterans Admin., 872 F.2d 995, 999 (Fed. Cir. 1989) (emphasis supplied).

Thus, in Gen'l Committee of Adjustment, United Transp. Union v. CSX Railroad Corp.,

893 F.2d 584, 593 (3d Cir. 1990), the court rejected the Union's argument that a prior

arbitration deciding issues relating to the sale of certain railroad line was controlling over

the subsequent arbitration arising from the sale of another portion of railroad line. "As

the district court correctly noted, 'the parties, contracts, background facts, and

circumstances of the sale in the [prior] arbitration proceeding are not the same as in the

instant matter,' and the [prior] arbitration decision has no binding effect on us." Id.

### a. The Law Favors Arbitrations Being Decided Independently

It is a well-settled principle that each arbitration is to be determined on its own

facts and the arbitrator or panel is to make a determination based upon the evidence

presented to it, not based on evidence that was not before it but which had been presented

in another matter:

> Arbitration normally envisions that each case be decided on
> its own under the controlling contract without undue
> reliance on other arbitration awards, even if the facts and

> circumstances are close.  <u>Arbitrators are expected to bring</u>
> <u>their best independent judgment to bear, not to</u>
> <u>ritualistically follow what others have done</u>, . . .

<u>Gonce v. Veterans Admin</u>., 872 F.2d 995, 997 (Fed. Cir. 1989) (emphasis added); <u>North</u>

<u>River Ins. Co. v. Allstate Ins. Co.</u>, 866 F. Supp. 123, 130 (S.D.N.Y. 1994).

      The Panel followed the principle which is incorporated into the Code of Ethics for

Arbitrators in Commercial Disputes, Canon V (B), of the American Arbitration

Association ("AAA"), which directs that "[a]n arbitrator should decide all matters justly,

exercising independent judgment, and should not permit outside pressure to affect the

decision."  Canon V (C) cautions that "[a]n arbitrator should not delegate the duty to

decide to any other person."  The AAA Code of Ethics is approved and recommended by

the American Bar Association and is widely accepted, including in NASD arbitrations.

<u>See</u> reference to Canon I of the ABA and the AAA Code of Ethics for Commercial

Arbitrators by Chairman Burns 1/10/02, 8:17-23.[21]   The <u>Holubowich</u> and <u>Meere</u>

arbitration panels also followed these principals in permitting a full and fair hearing on

the merits in each instance, and considered the <u>McDaniel</u> Decision, without giving it

preclusive effect in their respective arbitrations. This Panel, too, agreed to consider

<u>McDaniel</u> as support for Claimant-Respondent's case without permitting it to preclude the

litigation of the individual claims.  Ontario would give preclusive effect to <u>McDaniel</u>, but

not to the two subsequent decisions in favor of Bear Stearns which are in complete

contradiction to <u>McDaniel</u>.

---

[21] The NASD promulgates the same standards.  As noted in its "Arbitrator Recruitment and Training" materials, an Arbitrator for the NASD is to "weigh[ ] the facts of each case presented.  As an arbitrator, you will hear all sides of the issues as presented by the parties, study the evidence, and then decide how to resolve the matter."  <u>See</u> <u>www.nasdr.com</u>, Arbitrator Recruitment and Training, "What Duties Does an Arbitrator Perform."

NYC_FINAL FINAL Opposition to Motion to Vacate.DOC

The Panel correctly upheld its obligation to determine Ontario's claim on the evidence presented before it:  the Panel had the opportunity to see the witnesses testify live, and to review the underlying documents that were relevant to the Arbitration.  Direct review of the testimony and evidence here, best enabled this Panel independently to assess the credibility of the witnesses, the relevance of the proposed documentation, and the weight and sufficiency of the evidence, which on Bear Stearns' Motion for Judgment was found to be insufficient A panel should not -  and in this case did not  - rely solely on another panel's determination based upon different evidence, more limited testimony, different issues, different defenses, and dissimilarly situated claimants.  The Panel correctly did not preclude evidence or defenses based on one arbitration decision when two other decisions Meere, and Holubowich (a closely related and substantially similar arbitration) have reached opposite results.  Claimant-Respondent's allegation that the Panel ignored relevant law by requiring Ontario to prove its case, and in refusing to apply offensive collateral estoppel,  contradicts the well-established principle that each arbitration is to be decided on its own facts.

**C.    Preclusion in This Case Would Have Been Unfair to Respondents-Petitioners**

As noted by the Supreme Court in Parklane Hosiery[22]

> [T]he preferable approach for dealing with these problems in the federal
> courts is not to preclude the use of offensive collateral estoppel, but to
> grant trial courts broad discretion to determine when it should be applied.
> The general rule should be that in cases where a plaintiff could easily have
> joined in the earlier action or where, either for the reasons discussed above
> or for other reasons, the application of offensive collateral estoppel would

---

[22] The holding of Parklane Hosiery is that a party who has had issues of fact adjudicated adversely to it in an equitable action may be collaterally estopped from relitigating the same issue in a subsequent legal action.  Parklane at 324.  That case involved a private suit by a stockholder following an SEC injunctive proceeding in which a federal court ruled that Parklane's proxy statement was materially false and misleading.  Based on these specific circumstances, and the identical allegations concerning the petitioners and the SEC, the Court ruled that the trial court did not abuse its discretion in precluding relitigation of whether the proxy statement was misleading.

<u>be unfair to a defendant</u>, a trial judge should not allow the use of offensive collateral estoppel. (Emphasis added)

<u>Parklane Hosiery</u>, 439 U.S. at 331.

Among its three explicitly cited examples of situations where an estoppel application would be unfair to the defendant, the Supreme Court included where the "judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." 439 U.S. at 331.[23]  The <u>McDaniel</u> Award is inconsistent both with – and in fact directly contrary to -- the <u>Meere</u> award (which involved a public customer similar to the McDaniels) and with the <u>Holubowich</u> award (which involved an investor in BGI and insider of Baron, like Ontario, indeed Ontario's partner).

**D.  In Addition to the Inconsistent Prior Decisions, Ontario Did Not Demonstrate the Other Prerequisites to Preclusion**

> **a.  Claimant-Respondent Failed to Demonstrate that the Identical Issues Were Litigated**

Because Ontario was an insider of Baron, through its 5% ownership interest in Baron's parent company BGI, coupled with its position as a lender, this Arbitration was utterly unlike the <u>McDaniel</u> case, in which the claimants were solely public customers. The Panel had before it the following facts:

McDaniel had no relationship with Baron other than as an ordinary customer.  He was first solicited as a customer of Baron through a "cold call" in or about September

---

[23] Another example cited by the Supreme Court in <u>Parklane Hosiery</u>, of an instance in which the application of collateral estoppel would be unfair, is when the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.  The third instance cited by the <u>Parklane</u> court is where a defendant is sued for small or nominal damages and therefore he may have little incentive to defend vigorously.  In these cases, Bear Stearns has defended investor cases (such as Ontario and  Holubowich) differently than customer cases (such as McDaniel and Meere).  The Supreme Court also discussed the potential unfairness in allowing a plaintiff to adopt a "wait and see" attitude in its litigation, hoping that an earlier case will have a favorable result.  <u>Parklane</u> at 329-330.

1995:  he never spoke with Bressman or Baron's CFO regarding his accounts; he did not receive any non-public information from Baron nor was he given any disclosures of the substantial risks inherent in his investments in Baron.  McDaniel was not an investor in BGI, Baron's parent company, and did not have access to the company's financial information, which was available to an owner such as Ontario, including information of Baron's substantial losses over the years, and of the investigations by the SEC and NASD into allegations of improprieties at Baron such as stock manipulation, unauthorized trading and the failure to execute sell orders.  Ontario, on the other hand, was well aware of the risks to which he was exposing himself in trading through Baron. (See Investor Agreement, Claimant's Arbitration Ex. 16)

Moreover, two substantial transactions of which Ontario complained – its investment in BGI and its loan to Baron through a Secured Demand Note[24] – involved private agreements between Ontario and Baron (about which Ontario had substantial non-public information). Critically, none of the issues regarding alleged trading losses incurred by an underline owner or underline lender of Baron were litigated in the McDaniel arbitration.

Issues regarding Respondents-Petitioners' performance of its contractual obligations to Ontario are distinct from those at issue in McDaniel and thus the breach of contract issues are not identical despite Claimant-Respondent's argument that the Panel should have simply found the same breach of contract between Bear Stearns Securities Corp. and Ontario.   None of the facts regarding the actions of Bear Stearns with respect

---

[24] In executing the Secured Demand Note, claimant was advised by Baron that it would make a demand for payment of the note "only after it determines in good faith that it is in or approaching financial difficulty," meaning that its "excess net capital falls below what is needed to operate according to" the appropriate SEC Rule.  (emphasis supplied)  Thus, Ontario knew that those monies would be used only when Baron had no other funds available and that, at that point, the loan pledged by Ontario would be necessary to enable Baron to continue in business.  Ontario directly helped keep A.R. Baron in business; the McDaniels did not.

to Ontario's accounts were at issue in <u>McDaniel</u>.  Thus, Ontario's particular breach of

contract claim was not litigated in <u>McDaniel</u>.

Furthermore, Respondents-Petitioners had multiple defenses to Ontario's claim

that were not pertinent to the claims of a mere public customer and were not litigated in

the <u>McDaniel</u> arbitration.  For example, Ontario acknowledged in writing that it was put

on notice that its investment in BGI was risky and that the entire investment could be

lost.  Ontario acknowledged that it "could afford a complete loss of this investment" in

BGI, and that it "recognize[d] the speculative nature of this investment," among other

things.  Respondents' relevant defenses, including that Ontario knew more than Bear

Stearns and actively kept Baron in business, which were fundamental to the adjudication

of Ontario's claims, were not litigated in the <u>McDaniel</u> case.

In addition, since Ontario was an insider of Baron, and given the Holubowich

testimony, there were issues regarding Claimant's knowledge of and participation in

Baron's fraud on its public customers – and even on Respondents.  (Notably, the

<u>McDaniel</u> panel found that Bear Stearns was itself a victim of Baron.  (<u>McDaniel</u> Award,

at 26))  These too were not litigated in <u>McDaniel</u>.

### b.    The Panel Did Not Ignore Evidence Regarding the <u>McDaniel</u> Arbitration

Ontario submits in support of its Cross-Motion an affidavit by Jonathan Kord

Lagemann, an adversary of Bear Stearns in the <u>McDaniel</u> arbitration.  Ontario argues that

the Panel "disregarded or ignored this pertinent and material evidence" regarding

representations made by Respondents-Petitioners to the Panel.  (Motion to Vacate at 9)

Again, these matters were fully briefed and argued to the Panel.  As discussed more fully

above, it is within the Panel's discretion to consider and weigh evidence in making a

determination.  The Lagemann affidavits were annexed in support of Claimant's Motion to Preclude, and as any supporting documentation, the Panel considered its relevance and materiality, and determined the credibility of the statements.

As an adversary to Bear Stearns, Lagemann, not subject to cross-examination, made statements regarding his perception of what transpired in the McDaniel arbitration which Respondents-Petitioners refuted in its briefing. (Bear Stearns' Further Opposition to Motion to Preclude at 8-9 in Claimant's Exhibit Binder Vol. III Ex. 21)

Ontario attempts to smear the Holubowich arbitration with Lagemann's affidavit regarding events following the issuance of the award in that arbitration.[25]  Indeed, it is telling that even after Holubowich's arbitration counsel and proposed counsel (Lagemann himself!) apparently learned of Mr. Lynch's well-after-the-fact comments, no motion to vacate the award was ever made.  The award was confirmed. Lagemann's assertions as to whether a motion to vacate could possibly have been successful are pure speculation – and utterly irrelevant.

### c.    The Evidence Adduced at Arbitration Was Inconsistent with Determinations by the McDaniel Panel

The testimony of the only two witnesses called by Ontario[26] –Peter Murphy and Daniel Taub—contradicted both the "factual findings" in the OIPs, and the nine factual

---

[25] Ontario's characterization that the Holubowich award involved "gross corruption and arbitration bias" (Brief at 9) is another example of hyperbole.  Ontario attempts desperately to discredit the Holubowich decision by suggesting, via double hearsay no less, that one of the Holubowich arbitrators supposedly claimed to be unduly influenced at the time he rendered his decision.  (Motion to Vacate, at 9-10)  Yet the only evidence Ontario produces to substantiate this is a memo written by the losing claimant Holubowich's counsel claiming to have had an after-the-fact (and totally improper ex parte) telephone conversation with the arbitrator, wherein the arbitrator supposedly told Holubowich's counsel that he was disclosing the "improper influence" as some bizarre means of being "reinstated" on "the list of NASD neutrals".  (See Ontario Exhibit Binder, Volume III, at Exhibit 19) Claimant does not advise this Court of the facts that the Holubowich award was unanimously in favor of Bear Stearns and that the decision was confirmed by this Court.

[26] Claimant also called former Bear Stearns employee Keith Brigley who appeared several times to testify, but Ontario refused to attend those hearing days and thus never adduced testimony from his third witness.

statements by the McDaniel panel in its award. Ontario concedes that. (Motion to Vacate at 19) Once again, the Panel heard live testimony and had the ability to make credibility determinations as it is obligated to do as to this arbitration. The McDaniel panel stated that Bear Stearns knew or had reason to know that Baron trades were unauthorized. However, Mr. Murphy testified here that "we don't ever know whether the trade was unauthorized or not. As we sit in our role as clearing agent, we have no way to judge what happened as between the introducing firm and the firm's customer. You know, we're not the firm. We're not part of those conversations, so we process transactions. We would have no way of knowing whether those trades were truly unauthorized…" Indeed Mr. Murphy provided several other reasons why customers do not pay for trades. (See Tr. 8/6/02, 216:10-217:12); (Tr. 1/15/02, 134:2-11); (Tr. 1/15/02, 144:5-7). Similarly Mr. Taub testified that Bear Stearns could not tell from its books and records if Baron was making unauthorized trades. (Tr. 8/13/02, 740:16-23). No witness testified to the contrary.

The McDaniel panel also found that Bear Stearns had knowledge of Baron's unlawful and fraudulent conduct. In the Ontario Arbitration, Mr. Murphy testified that he did not personally know of any unlawful conduct, nor did the SEC ever advise him of Baron's fraudulent sales or trading practices. (Tr. 8/16/02, 140:21-141:7); (Tr. 1/14/02, 150:1-15); (Tr. 7/19/02, 153:10-154:15). Mr. Murphy also advised this Panel that Bear Stearns did not, and does not, become involved in the net capital compliance of an introducing broker (Tr. 1/11/02, 284:5-9); (Tr. 1/11/02, 300:14-25); (Tr. 1/11/02, 492:10-493:4), in the monitoring, or supervision of trades conducted by Baron brokers (Tr. 1/10/02, 141:20 – 142:2); (Tr. 1/10/02, 144:9-13), or in the monitoring of complaints

filed by Baron customers. (Tr. 1/15/02, 103:5-15); (Tr. 1/15/02, 159:10-17). Indeed, as Mr. Taub advised, customer complaints alleging unauthorized trading are not the legal responsibility of Bear Stearns. (Tr. 8/12/02, 314:24-315:9); (Tr. 8/12/02, 332:5-9); (Tr. 8/12/02, 333:10-13).

As to the assumptions made by the <u>McDaniel</u> panel regarding the significance of Bear Stearns' employees placed on Baron's premises, Mr. Murphy explained at the Ontario arbitration that the decision to put people on site of an introducing broker is to protect against credit risk and exposure inherent in a clearing relationship. (Tr. 1/15/02, 11:2-6); (Tr. 1/15/02, 11:2-6); (Tr. 1/15/02, 37:22-38:1); (Tr. 1/15/02, 37:1-12).

The evidence that had already been adduced at the time it made its Motion to Preclude contradicted the findings by the <u>McDaniel</u> panel. There were also two other arbitration decisions which were directly contrary to <u>McDaniel</u>. This Panel's decision to continue hearing evidence rather than halting the proceedings and ignoring the evidence already before it was consistent with the law on collateral estoppel, and not in manifest disregard of the law. A decision to preclude Respondents-Petitioners from litigating Ontario's claims here, would have been fundamentally unfair.

## CONCLUSION

The Panel properly considered what was before it, including the McDaniel opinions and the OIPs.  It heard live testimony.  It also heard Claimant concede that he had not proven damages.  Its Award was proper.  For the reasons set forth herein and based on the attachments hereto, and the record submitted herewith, including the transcripts and exhibits admitted into evidence, Respondents-Petitioners respectfully request that their Petition to Confirm the Arbitration Award be granted, and Claimant-Respondent's Cross-Motion to Vacate be denied in its entirety.

Dated:  April 6, 2004
        New York, New York

By:     /s/ Savitha Keesari Masson
        _____
        Harold J. Ruvoldt (HR-6556)
        Cathy Fleming (CF-2682)
        Savitha Keesari Masson (SM-3036)
        EDWARDS & ANGELL, LLP
        750 Lexington Avenue
        New York, New York 10022
        212-308-4411
        Attorneys for Respondents-Petitioners


To:     Stuart Melnick, Esq.

NYC_FINAL FINAL Opposition to Motion to Vacate.DOC